**IN THE UNITED STATES COURT OF APPEALS FOR
THE DISTRICT OF COLUMBIA CIRCUIT**

STATE OF MINNESOTA *AND* STATE OF
ILLINOIS,

                                    Petitioners,

        v.

CHRIS WRIGHT, in his official capacity as
Secretary of Energy, United States Department of
Energy; UNITED STATES DEPARTMENT OF
ENERGY

                                   Respondents.

Case No. <u>26-</u>1076

1

## PETITION FOR REVIEW

Pursuant to 16 U.S.C. § 825l(b)(1) (Federal Power Act § 202(c)), Rule 15 of the Federal Rules of Appellate Procedure, and D.C. Circuit Rule 15, the State of Minnesota and the State of Illinois (collectively, "Petitioners") hereby petition this Court for review of the final actions of Respondents United States Department of Energy and Secretary of Energy, Chris Wright, in his official capacity, set forth in the Department of Energy's December 23, 2025, Order No. 202-25-13 directing the Midcontinent Independent System Operator and CenterPoint Energy to ensure that the coal-burning Unit 2 of the F.B. Culley Generation Station in Warrick County, Indiana, operated by CenterPoint Energy, remains available to operate through March 23, 2026. A copy of the order is attached as Attachment 1.

Dated: April 2, 2026

Respectfully Submitted,

**For the State of Minnesota**
*/s/ Peter N. Surdo*
Peter N. Surdo
Special Assistant Attorney General
Office of the Minnesota Attorney General
445 Minnesota St., Suite 600
St. Paul, MN 55101
(651) 757-1061
peter.surdo@ag.state.mn.us

*Attorney for Petitioner State of Minnesota*

**For the State of Illinois**
*/s/ Jason E. James*
Jason E. James
Assistant Attorney General
Sarah Hunger
Deputy Solicitor General
Joanna Brinkman
Complex Litigation Counsel
Illinois Attorney General's Office
201 W. Pointe Drive, Suite 7
Belleville, IL 62226
(217) 843-0322
jason.james@ilag.gov

*Attorneys for Petitioner State of Illinois*

2

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2026, I filed the foregoing Petition for Review by Minnesota and Illinois with the D.C. Circuit Court of Appeals using the court's electronic filing system, and pursuant to Federal Rule of Appellate Procedure and the Court's Local Rule 15, the Respondents will be served by the Clerk for the D.C. Circuit Court of Appeals.

I also served the foregoing Petition for Review by First Class Certified Mail with a return receipt requested, as well as email, to the following parties at the following physical and electronic addresses:

Department of Energy and
Secretary Chris Wright at:
U.S. Department of Energy
1000 Independence Ave., SW
Washington D.C. 20585
AskCR@hq.doe.gov
The.Secretary@hq.doe.gov


Pamela Bondi
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530


Jeffrey Novak
Acting General Counsel
Office of the General Counsel
U.S. Department of Energy
1000 Independence Ave., SW
Washington, D.C. 20585

Michigan Attorney General
Dana Nessel
Michael E. Moody
Lucas Wollenzien
Assistant Attorneys General
Special Litigation Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7627
MoodyM2@michigan.gov
WollenzienL@michigan.gov


Organization of MISO States
Brad Pope
Tricia DeBleeckere
811 E. Washington Ave., Suite 400
Madison, WI 53703
brad@misostates.org
tricia@misostates.org

Sierra Club
Gregory E. Wannier
Tony Mendoza
2101 Webster St. Suite 1300
Oakland, CA 94612
(415) 977-5646
greg.wannier@sierraclub.org
tony.mendoza@sierraclub.org
Jonah Baskin
50 F Street NW, Eighth Floor
Washington, DC 20001
(202) 556-3917
jonah.baskin@sierraclub.org


Environmental Law & Policy
Center
Bradley Klein
Nicholas Wallace
35 East Wacker Dr., Suite 1600
Chicago, IL 60601
(312) 673-6500
bklein@elpc.org
nwallace@elpc.org

Illinois Commerce Commission
Robert Funk
Christine F. Ericson
160 N. LaSalle St., Suite C-800
Chicago, IL 60601
(312) 793-2877
robert.funk@illinois.gov
christine.ericson@illinois.gov


Citizens Action Coalition of Indiana,
Just Transition Northwest Indiana,
Hoosier Environmental Council,
and Public Citizen
Sameer H. Doshi
311 S. Wacker Dr., Suite 1400
Chicago, IL 60606
(312) 800-8332
sdoshi@earthjustice.org
Michael Lenoff
Jennifer Yun
1400 L St. NW, Lobby 2, Unit 34117
Washington, DC 20005
(202) 660-0519
mlenoff@earthjustice.org
jyun@earthjustice.org


Dated: April 2, 2026

Respectfully submitted,
*/s/ Peter N. Surdo*
Peter N. Surdo

Attachment 1



**Department of Energy**
Washington, DC 20585

**Order No. 202-25-13**

Pursuant to the authority vested in the Secretary of Energy by section 202(c) of the Federal Power Act (FPA),[1] and section 301(b) of the Department of Energy Organization Act,[2] and for the reasons set forth below, I hereby determine that an emergency exists in portions of the Midwest region of the United States due to a shortage of electric energy, a shortage of facilities for the generation of electricity, and other causes. Issuance of this Order will meet the emergency and serve the public interest.

### *BACKGROUND*

The F.B. Culley Generating Station (Culley) is an electric generating facility in Warrick County, Indiana. Culley is owned and operated by CenterPoint Energy and consists of two coal-fired generation units, Unit 2 (103.7 MW) and Unit 3 (265.2 MW), with a combined name plate capacity of 368.9 MW. Unit 2 and Unit 3 began operations in 1966 and 1973, respectively. Unit 2 is slated to cease operations in December 2025.[3]

### *EMERGENCY SITUATION*

Midcontinent Independent System Operator, Inc.'s (MISO) year-round resource adequacy concerns are well documented. In 2022, MISO requested Federal Energy Regulatory Commission (FERC) approval of its filing to revise its resource adequacy construct (including the Planning Resource Auction or PRA) to establish capacity requirements for each of the four seasons of the year rather than on an annual basis determined by peak summer demand.[4] MISO justified this revision by explaining that "Reliability risks associated with Resource Adequacy have shifted from 'Summer only' to a year-round concern."[5] MISO noted that over 60% of all "MaxGen" events (events when MISO initiates emergency procedures because of concerns over the adequacy of available generation) occurred outside of the summer season.[6]

In December of 2023, MISO released an "Attributes Roadmap," in which it presented "an in-depth look at the challenges of operating a reliable bulk electric system in a rapidly

---

[1] 16 U.S.C. § 824a(c).

[2] 42 U.S.C. § 7151(b).

[3] As a coal-fired facility, it would be difficult for Culley Unit 2 to resume operations once it has been retired. Specifically, any stop and start of operation creates heating and cooling cycles that could cause an immediate failure that could take 30-60 days to repair if a unit comes offline. In addition, other practical issues, such as employment, contracts, and permits may greatly increase the timeline for resumption of operations. Further, if Culley were to begin disassembling the plant or other related facilities, the associated challenges would be greatly exacerbated. Thus, continuous operation is required in such cases so long as the Secretary determines a shortage exists and is likely to persist.

[4] *Midcontinent Independent System Operator, Inc.,* FERC Docket No. ER22-495-000 (Nov. 30, 2021). This request was approved by FERC on August 31, 2022. *See Midcontinent Independent System Operator, Inc.*, 180 FERC ¶ 61,141 (2022).

[5] MISO Transmittal Letter at 3, FERC Docket No. ER22-495-000 (Nov. 30, 2021).

[6] *Id.* at 3-4.

transforming energy landscape."[7]  Among other things, this report described changes in the time of year during which the risk of the loss of load was greatest.  For the 2023/24 Planning Year, the greatest risk of loss of load was in the summer, but it is expected that by the summer of 2027, there will be an equal loss of load risk in both the summer and fall seasons.  MISO also projected that the risk of loss of load in the winter and spring seasons, although not as high as in the summer or fall, will nevertheless increase over time.[8]

More recently, MISO affirmed the resource adequacy problems occurring outside of its summer season in its 2024 report entitled, "*MISO's Response to the Reliability Imperative.*"[9]  In a section of that report entitled "Risks in Non-Summer Seasons," MISO again stressed that it has resource reliability concerns outside of the summer season:

> Widespread retirements of dispatchable resources, lower reserve margins, more frequent and severe weather events and increased reliance on weather-dependent renewables and emergency-only resources have altered the region's highest historic risk profile, creating risks in non-summer months that rarely posed challenges in the past.[10]

These MISO studies indicate that the emergency conditions caused by the loss of generation capacity in MISO extend past the summer season.  The evidence indicates that there is also a potential longer term resource adequacy emergency in MISO.

In its 2024 Long-Term Reliability Assessment (LTRA), the North American Electric Reliability Corporation (NERC) notes that the MISO assessment area is at an elevated risk "because probabilistic assessments indicate above-normal generator outages during extreme weather can result in unserved energy or load loss.  With uncertainty around new resource additions and existing generator retirements, MISO is also at risk of falling below [Reference Margin Levels] within the next five years."[11]

When MISO reported the results of its PRA for the 2025-26 Planning Year, it noted that "new capacity additions were insufficient to offset the negative impacts of decreased accreditation, suspensions/retirements and external resources" in the northern and central zones, which include Indiana.[12]

On June 6, 2025, the Organization of MISO States (OMS) and MISO issued the results of their survey, which has been conducted annually for many years to determine the degree to

---

[7] MISO, *Attributes Roadmap*, at 3 (Dec. 2023), https://cdn.misoenergy.org/2023%20Attributes%20Roadmap631174.pdf.

[8] *Id.* at 11.

[9] MISO, *MISO's Response to the Reliability Imperative* (Updated Feb. 2024), https://cdn.misoenergy.org/2024+Reliability+Imperative+report+Feb.+21+Final504018.pdf.

[10] *Id.* at 12.

[11] *NERC 2024 Long-Term Reliability Assessment*, at 13 (December 2024, corrected July 11, 2025), https://www.nerc.com/globalassets/our-work/assessments/2024-ltra_corrected_july_2025.pdf.

[12] MISO, *Planning Resource Auction: Results for Planning Year 2025-26*, at 13 (April 2025), https://cdn.misoenergy.org/2025%20PRA%20Results%20Posting%2020250529_Corrections694160.pdf.

which expected capacity resources satisfy planning reserve margin requirements.[13]  The 2025 Survey presented projections of resource adequacy for the summer of 2026 and subsequent years.  Although the survey projected a potential capacity surplus for the summer of 2026, it also projected that at least 3.1 GW of additional generation capacity beyond currently committed generation capacity must be added to meet the projected planning reserve margin.[14]  The survey also projected that there would be insufficient capacity to meet the peak demand for electricity in each of the following four summers, increasing from a deficit of 1.4 GW in 2027 to 8.2 GW in 2030.[15]  Similar results were projected for MISO's winter seasons, with a small surplus of generation capacity in 2026, followed by increasing deficits the following four years.[16]

The primary reasons for these projected deficits also are shown on the OMS-MISO survey.  Large quantities of existing generation capacity are projected to be retired each year while, at the same time, the demand for electricity is projected to increase at an accelerating pace.[17]  Although the OMS-MISO survey projects generation capacity to continue to increase in the coming years with the addition of new potential generation assets, the increase in capacity is largely offset by the projected retirements, and does not keep up with the growth in demand.[18]

MISO has been taking steps to address these projected deficits, but the solution is years away.  For example, on June 6, 2025, MISO submitted a proposal to FERC to establish an Expedited Resource Addition Study (ERAS) process to provide a framework for the expedited study of interconnection requests to address urgent resource adequacy and reliability needs in the near term.  This proposal was approved by FERC on July 21, 2025.[19]  The ERAS process should help expedite the construction of needed new capacity.  However, resources studied under the ERAS will have commercial operation dates that are at least three years away, and are provided an additional three-year grace period to commence commercial operations.[20]  In addition, supply chain constraints impeding the acquisition of critical grid components, including large natural gas turbines and transformers, are likely to further hinder rapid construction and exacerbate reliability concerns.[21]  Consequently, it is not at all clear that the new ERAS process will result in the addition of new capacity in the next few years.

---

[13] OMS and MISO, *OMS-MISO Survey Results* (Updated June 6, 2025), https://cdn.misoenergy.org/20250606%20OMS%20MISO%20Survey%20Results%20Workshop%20Presentation702311.pdf.

[14] *Id.* at 2.

[15] *Id.* at 7.

[16] *Id.* at 9.

[17] *Id.* at 7, 9.

[18] *Id.*

[19] *Midcontinent Independent System Operator, Inc.,* 192 FERC ¶ 61,064 (2025).

[20] *Id.* P 84.

[21] *See generally*, S&P Global, *US Gas-Fired Turbine Wait Times as Much as Seven Years; Costs Up Sharply*, (May 2025), ("With demand for natural gas-fired turbines in the US rapidly accelerating amid power demand growth forecasts driven by AI, manufacturing, and electrification, wait times for turbines are anywhere between one and seven years depending on the model, and costs have increased considerably, experts told Platts."), https://www.spglobal.com/commodity-insights/en/news-research/latest-news/electric-power/052025-us-gas-fired-turbine-wait-times-as-much-as-seven-years-costs-up-sharply.

More broadly, executive orders issued by President Donald J. Trump on January 20, 2025, and April 8, 2025, underscore the dire energy challenges facing the Nation due to growing resource adequacy concerns.  President Trump likewise declared a national energy emergency in Executive Order 14156, "Declaring a National Energy Emergency," that the "United States' insufficient energy production, transportation, refining, and generation constitutes an unusual and extraordinary threat to our Nation's economy, national security, and foreign policy."[22]  The Executive Order adds: "Hostile state and non-state foreign actors have targeted our domestic energy infrastructure, weaponized our reliance on foreign energy, and abused their ability to cause dramatic swings within international commodity markets."[23]  In a subsequent Executive Order 14262, "Strengthening the Reliability and Security of the United States Electric Grid," President Trump emphasized that "the United States is experiencing an unprecedented surge in electricity demand driven by rapid technological advancements, including the expansion of artificial intelligence data centers and increase in domestic manufacturing."[24]

Further, the Department detailed the myriad challenges affecting the Nation's energy systems in its July 2025 "Resource Adequacy Report: Evaluating the Reliability and Security of the United States Electric Grid," issued pursuant to the President's directive in Executive Order 14262.  The Department concluded that "[a]bsent decisive intervention, the Nation's power grid will be unable to meet projected demand for manufacturing, re-industrialization, and data centers driving artificial intelligence (AI) innovation."[25]

## *ORDER*

FPA section 202(c)(1) provides that whenever the Secretary of Energy determines "that an emergency exists by reason of a sudden increase in the demand for electric energy, or a shortage of electric energy or of facilities for the generation or transmission of electric energy," then the Secretary has the authority "to require by order . . . . such generation, delivery, interchange, or transmission of electric energy as in its judgment will best meet the emergency and serve the public interest."[26]  This statutory language constitutes a specific grant of authority to the Secretary to require the continued operation of Culley Unit 2 when the Secretary has determined that such continued operation will best meet an emergency caused by a sudden increase in the demand for electric energy or a shortage of generation capacity.

---

[22] Executive Order No. 14156, 90 Fed. Reg. 8433 (Jan. 20, 2025) (*Declaring a National Energy Emergency*), https://www.federalregister.gov/documents/2025/01/29/2025-02003/declaring-a-national-energy-emergency.

[23] *Id*.

[24] Executive Order No. 14262, 90 Fed. Reg. 15521 (Apr. 8, 2025) (*Strengthening the Reliability and Security of the United States Electric Grid*), https://www.federalregister.gov/documents/2025/04/14/2025-06381/strengthening-the-reliability-and-security-of-the-united-states-electric-grid.

[25] U.S. Department of Energy, *Resource Adequacy Report: Evaluating the Reliability and Security of the United States Electric Grid*, at 1 (July 2025), https://www.energy.gov/sites/default/files/2025-07/DOE%20Final%20EO%2\
0Report%20%28FINAL%20JULY%207%29.pdf.

[26] Although the text of FPA section 202(c) grants this authority to "the Commission," section 301(b) of the Department of Energy Organization Act transferred this authority to the Secretary of Energy. *See* 42 U.S.C. § 7151(b).

Such is the case here.  As described above, the emergency conditions resulting from increasing demand and shortage from accelerated retirement of generation facilities will continue in the near term and are also likely to continue in subsequent years.  This could lead to the loss of power to homes and businesses in the areas that may be affected by curtailments or power outages, presenting a risk to public health and safety.  Given the responsibility of MISO to identify and dispatch generation necessary to meet load requirements, I have determined that, under the conditions specified below, continued additional dispatch of Culley Unit 2 is necessary to best meet the emergency arising from increased demand, determined shortage, and other causes, and serve the public interest under FPA section 202(c).

To ensure Culley Unit 2 will be available if needed to address emergency conditions, Culley Unit 2 shall remain in operation until March 23, 2026.

Based on my determination of an emergency set forth above, I hereby order:

A.  From December 23, 2025, MISO and CenterPoint Energy shall take all measures necessary to ensure that Culley Unit 2 is available to operate.  For the duration of this Order, MISO is directed to take every step to employ economic dispatch of Culley Unit 2 to minimize cost to ratepayers.  Following the conclusion of this Order, sufficient time for orderly ramp down is permitted, consistent with industry practices.  CenterPoint Energy is directed to comply with all orders from MISO related to the availability and dispatch of Culley Unit 2.

B.  To minimize adverse environmental impacts, this Order limits operation of dispatched units to the times and within the parameters as determined by MISO, pursuant to paragraph A.  MISO shall provide a daily notification to the Department (via AskCR@hq.doe.gov) reporting whether Culley Unit 2 has operated in compliance with the allowances contained in this Order.

C.  All operations of Culley Unit 2 must comply with applicable environmental requirements, including but not limited to monitoring, reporting, and recordkeeping requirements, to the maximum extent feasible while operating consistent with the emergency conditions.  This Order does not provide relief from any obligation to pay fees or purchase offsets or allowances for emissions that occur during the emergency condition or to use other geographic or temporal flexibilities available to generators.

D.  By January 13, 2026, MISO is directed to provide the Department of Energy (via AskCR@hq.doe.gov) with information concerning the measures it has taken and is planning to take to ensure the operational availability of Culley Unit 2 consistent with this Order.  MISO and CenterPoint Energy shall also provide such additional information regarding the environmental impacts of this Order and its compliance with the conditions of this Order, in each case as requested by the Department of Energy from time to time.

E.  CenterPoint Energy is directed to file with the Federal Energy Regulatory Commission tariff revisions or waivers to effectuate this Order.  Rate recovery is available pursuant to 16 U.S.C. § 824a(c).

F.  This Order shall not preclude the need for Culley Unit 2 to comply with applicable state, local, or Federal laws or regulations following the expiration of this Order.

G.  Because this Order is predicated on the shortage of facilities for generation of electric energy and other causes, Culley Unit 2 shall not be considered a capacity resource.

H.  This Order shall be effective from 11:59 PM Eastern Standard Time (EST) on December 23, 2025, and shall expire at 11:59 PM Eastern Daylight Time (EDT) on March 23, 2026, with the exception of applicable compliance obligations in paragraph D.

Issued in Denver, Colorado at 6:39 PM EST on this 23rd day of December 2025.

_Chris Wright_

Chris Wright
Secretary of Energy

cc:     **FERC Commissioners**
        Chairman Laura V. Swett
        Commissioner David Rosner
        Commissioner Lindsay S. See
        Commissioner Judy W. Chang
        Commissioner David A. LaCerte

        **Indiana Utility Regulatory Commission**
        Chairman Jim Huston
        Commissioner David Veleta
        Commissioner David Ziegner